# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| DEBBY ROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:08-CV-03292-RED |
| | ) | |
| SPRINGFIELD-GREENE COUNTY | ) | |
| HEALTH DEPARTMENT, | ) | |
| COX HEALTH SYSTEMS, and | ) | |
| WAL-MART SUPERCENTER, | ) | |
| | ) | |
| Defendants | ) | |

## ORDER

Before the Court are Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment (Doc. 84); Defendant CoxHealth's Motion for Summary Judgment (Doc. 85); Separate Defendant Springfield-Greene County Health Department's Motion for Summary Judgment (Doc. 88); and Plaintiff's Motion for Summary Judgment (Doc. 90). For the reasons stated herein, Defendants' motions for summary judgment are **GRANTED** (Docs. 84, 85, 88), and Plaintiff's motion for summary judgment is **DENIED** (Doc. 90).

## BACKGROUND

Plaintiff Debby Rose (hereinafter "Plaintiff") alleges Defendants Wal-Mart Stores East, LP (hereinafter "Wal-Mart"), Springfield-Greene County Health Department (hereinafter "SGCHD"), and Cox Health Systems (hereinafter "Cox") discriminated against her by denying her access to various establishments while accompanied by a service animal. Plaintiff claims she suffers from medically diagnosable anxiety disorder and agoraphobia, which she claims substantially limits her ability to go out in public without medication. When she does go in public, Plaintiff takes a ten year old Bonnet Macaque monkey which she claims is trained to perform tasks for her benefit. In

September of 2006, Plaintiff claims SGCHD sent a number of letters to food service establishments wherein it instructed the operators not to allow Plaintiff to enter their establishments when accompanied by her monkey. Plaintiff argues she has been improperly denied access to Wal-Mart, Cox, and other establishments while accompanied by her monkey as a direct result of the letters.

## I. Plaintiff's Alleged Disability

Plaintiff claims she has suffered from agoraphobia and anxiety disorder since the 1970s, and that these disorders have caused her to lock herself and her children in her home, and inhibit her ability to go out in public without over-the-counter medication. Though Plaintiff claims she has suffered from these disorders since the 1970s, she was not diagnosed with agoraphobia until September 2006.[1] Prior to the September 2006 diagnosis, the medical history is largely bereft of any references to agoraphobia or social anxiety. During her own deposition, Plaintiff admitted she did not request or receive any prescription medication for anxiety from 1998 through January 2008. On an employee health questionnaire she filled in out in the early 1990s, Plaintiff indicated "no" in response to questions concerning whether she was currently suffering or had in the past suffered from depression, mental illness, or medical disability.[2] Later, in May 1999, Plaintiff told her treating physician she had no symptoms of anxiety or depression.

From the mid-1970s until she disclosed her alleged disability in June 2005, Plaintiff was married three times, raised six children, held many different jobs, and moved residences in and out

---

[1] Plaintiff's physician stated during his deposition that his agoraphobia diagnosis was primarily based upon Plaintiff's own subjective complaints. When asked what symptoms Plaintiff displayed that led him to believe Plaintiff had agoraphobia, Plaintiff's physician stated "[o]nce again, she – she – she told me symptoms. She didn't display anything."

[2] Plaintiff now claims she was not truthful on the health questionnaire.

2

of Missouri "quite a bit." Plaintiff accomplished all of this not only without any prescription from a doctor for medicine related to panic disorder, anxiety or agoraphobia, but also without the use of a service animal. Plaintiff admitted to taking many family vacations over these years, including trips to California, Florida, and Oklahoma. Plaintiff has held a number of different jobs, all of which require extensive dealings with the public. For example, Plaintiff has worked as a dental assistant and managed the Greene County Humane Society. During the 1980s, Plaintiff worked in the health care field as a respiratory therapist. In 1991, Plaintiff obtained a Missouri real estate broker's license, and she has worked as a broker since that time, selling approximately five to seven homes per year through 2006. In 2005, Plaintiff founded Wild Things Exotic Animal Orphanage, where she and her sons work to rescue primates and find facilities for primate placement. In March 2008, Plaintiff applied for various jobs (including cave guide and front entrance ticket taker) at Silver Dollar City, an amusement park in Branson, Missouri, and she eventually worked in the paid games area of the park. In addition to these jobs, Plaintiff also served as president of the Walnut Street Historic Association in Springfield, Missouri.

**II.     The Monkey**

Plaintiff claims her Bonnet Macaque monkey, named Richard, qualifies as a service animal under the ADA. Plaintiff obtained the monkey in 2004 from a breeder. At the time she obtained him the monkey was nearly dead and required constant attendant care. Because the monkey required constant care, Plaintiff took the monkey with her nearly everywhere. Now Plaintiff claims the monkey alleviates her anxiety disorder and allows her to function more normally in public.

Plaintiff claims the monkey received at least some training prior to when she acquired him, and also claims he was surgically altered as part of this "training" to reduce his aggressive

3

tendencies. Though Plaintiff alleges he received some training, she offers no examples of training specifically related to her disability prior to when she acquired him. After Plaintiff acquired the monkey, she was the only person to train it. Plaintiff claims the monkey performs various tasks related to her disability such as "break[ing] the spell," "break[ing] off the focus," "crowd control," "chang[ing] the mood," "designat[ing] when [she] ha[s] a change in [her] heart rate or blood pressure," and "keep[ing] control of what [she's] doing."[3] Plaintiff's physician stated that the primary task the monkey performs for Plaintiff is that it "sits with" her to comfort her.[4]

Plaintiff registered the monkey with Service Animal Registry of America (hereinafter "SARA") by filling out a form and paying a fee.

## III. The Incident

SGCHD alleges it received several complaints regarding the monkey being present in food service establishments. As a result, SGCHD claims it undertook an investigation as to whether the monkey could qualify as a service animal. As part of this investigation, SGCHD allegedly contacted the Department of Justice, the Food and Drug Administration, the Missouri Department of Health and Senior Services, and Missouri state veterinarian Dr. Howard Pue. Based upon the research, SGCHD made a determination that the monkey did not qualify as a service animal and presented

---

[3] In her response to SGCHD's interrogatories, Plaintiff provides more details regarding the monkey's beneficial tasks, and alleges it performs the following: blocks people from getting too close in public places, "tolerat[es] ... a position for hours" so Plaintiff can focus without anxiety, brings Plaintiff to full awareness by performing tasks such as holding her hand or touching her face, sits on her lap for "as long as it takes to relieve the emotional overload," gets his toothbrush to encourage her to get out of bed, brings the remote control to the TV or the cell phone if Plaintiff is not "functioning normally," turns her turn signal in the car when she reaches her street to inform her it's time to turn, the monkey can open the car door allegedly as an "escape strategy," uses a "direct look with an open mouth" or a "gentle push" to alert strangers to stay away, and hugs Plaintiff to bring her anxiety level down.

[4] Though Plaintiff often cites to her physician's testimony as support that her monkey is a service animal, her doctor actually testified that he has no experience with service animals, does not know the definition of service animal, and is unable to state whether the monkey would qualify under the ADA.

a threat to public health. Upon making this determination, SGCHD directed letters to food service establishments throughout Springfield to instruct them that allowing Plaintiff to enter their establishments with her monkey would constitute a violation of Missouri health codes.

Wal-Mart received this letter from SGCHD. When Plaintiff attempted to enter Wal-Mart with her monkey, Wal-Mart officials stopped her and explained they could not let her enter the store with the monkey. Wal-Mart cited SGCHD's letter to Plaintiff as its reason for the denial.

Cox operates food service establishments at Cox College and at Cox South Hospital, and also received SGCHD's letter. On February 27, 2007, Cox advised Plaintiff that she would not be permitted to attend classes at Cox College with her monkey, but informed her she could continue classes without the monkey.[5] Cox based this determination in part on SGCHD's letter, and also on independent research it allegedly performed related to safety issues involved with having a wild primate in medical care facilities. Cox's Director of Infection Prevention, Susan Soetaert, and also Dr. Wolfe Gerecht, a retired infectious disease physician who worked at Cox during the time in question, reviewed the United States Centers for Disease Control and Prevention (hereinafter "CDC") guidelines and Cox's own policy on service animals. Cox has a policy not to allow exotic service animals, including non-human primates, into its facilities because of the potential for unpredictable behavior and disease transmission. Cox considers the CDC guidelines binding upon it, including the guidelines stating that "[p]roviding access to exotic animals ... that are used as service animals is problematic ... [b]ecause some of these animals exhibit high-risk behaviors that may increase the potential for zoonotic disease transmission (e.g., herpes B infection)." Ultimately,

---

[5] Plaintiff had enrolled to attend classes at Cox College, and after the denied access, Cox refunded Plaintiff's tuition and fees in full. Plaintiff testified that she knew she would probably not be able to attend clinical rotations with the monkey because it could make patients uncomfortable.

Cox based its decision to deny access on a number of factors, including its specialists' recommendation against access because of the threat of unpredictable behavior and disease transmission cited in the CDC guidelines and Cox's own policy on exotic service animals, concern for patient dignity and confidentiality, and the SGCHD letter.

**ANALYSIS**

Plaintiff initially sought relief under the Americans With Disabilities Act (hereinafter "ADA"), the Civil Rights Act, and the Missouri Human Rights Act. On December 4, 2008, the Court dismissed Plaintiff's Civil Rights Act and state law claims against Defendants Wal-Mart and SGCHD, but allowed the ADA claims to proceed forward. Cox did not file a motion to dismiss at the time, but now moves for summary judgment on Plaintiff's Civil Rights Act and Missouri state law claims. Plaintiff essentially concedes these claims against Cox. *See* Pl.'s Combined Resp. to Def.'s Mot. For Summ. J. at 28 ("Because of prior rulings by the Court ... this action currently pends ... under Title III [of the ADA] against Cox Health Systems and Wal-Mart Stores East, LP..."). The same reasoning outlined in the Court's Order of December 4, 2008, applies to the claims against Cox as well, and therefore the Court GRANTS summary judgment in Defendant Cox's favor on Plaintiff's Civil Rights Act and state law claims.

With this ruling, Plaintiff's ADA claims are the only claims still pending. Plaintiff's ADA claims arise under Title II of the ADA against SGCHD, and under Title III of the ADA against Wal-Mart and Cox.[6] Title III of the ADA prohibits any person who owns or operates a place of public

---

[6] Title II of the ADA deals with discrimination on the basis of disability by public entities, while Title III prohibits discrimination on the basis of disability by owners or operators of places of public accommodation. *See Gaona v. Town & Country Credit*, 324 F.3d 1050, 1056 (8th Cir. 2003). There is no dispute here that under the applicable definitions, SGCHD is a public entity under Title II of the ADA, and Wal-Mart and Cox qualify as public accommodations under Title III. *See* 42 U.S.C. § 12131; 42 U.S.C. § 12181.

accommodation from discriminating against an individual on the basis of that individual's disability, while Title II states that no qualified individual with a disability shall be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by any such entity because of the individual's disability. *See* 42 U.S.C. § 12182(a), 42 U.S.C. § 12132. "A person alleging discrimination under Title III must show (1) that [s]he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999). To establish a prima facie case under Title II, a plaintiff must show (1) that she is a qualified individual with a disability, (2) she was denied the benefits of a public entity's service or program, or otherwise discriminated against, and (3) the denial or discrimination was based upon the disability. *Schaub v. County of Olmsted*, — F. Supp. 2d ----, 2009 WL 2951055, at *6 (D. Minn. 2009). Because the alleged discrimination in this case only involves Plaintiff's access with her alleged service animal, she must also prove her monkey qualifies as a service animal under the ADA.

All of the Defendants argue summary judgment is appropriate because Plaintiff is not a qualified individual with a disability and because the monkey does not qualify as a service animal. Defendants also argue that denial of access was proper because it was denied pursuant to legitimate health and safety concerns. After careful review of the parties' briefing, the Court agrees with Defendants and finds summary judgment is proper for the following reasons.

7

**I.      Plaintiff is Not Disabled Under the ADA**

Under either Title II or Title III, Plaintiff must actually qualify as disabled under the ADA to state a claim.  The ADA defines "disability" as either "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1).  The parties only address the first definition in any detail (that of impairment of a major life activity), and there is very little that would support Plaintiff under the second two definitions.  Regarding whether Plaintiff suffers from "a physical or mental impairment that substantially limits one or more of the major life activities," the various Defendants challenge both whether Plaintiff actually suffers from a mental impairment, and whether her impairments substantially limit any of her life activities.  Whether or not she suffers from a mental impairment raises a number of factual issues, and is ill-suited to resolution at the summary judgment stage in this case.  However, even assuming Plaintiff does suffer from a qualifying mental impairment, the evidence is clear that her impairments do not substantially limit any of her major life activities.

According to ADA regulations, an impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner or duration under which an individual can perform such an activity compared to the general population. *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir. 2001).  "Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working, ... as well as sitting, standing, lifting, and reaching." *Id.*  "Several factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and

severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact." *Id.* When determining whether an individual is substantially limited in a major life activity, courts must also consider mitigating measures such as medication and assisting devices. *Id.*

Plaintiff's only alleged disability is her agoraphobia and social anxiety disorder, which she claims substantially limits her ability to function normally in public. Plaintiff claims that without her monkey her "condition worsens and [she] can barely function at all, [she] will not leave [her] home, and sometimes will not get out of bed."[7] Rose Aff. ¶ 7. However, other than Plaintiff's own broad and self-serving statements, the evidentiary record offers no support for Plaintiff's claimed limitations. Plaintiff claims to have suffered from her impairments for more than 30 years, yet she was not diagnosed with said disorders until 2006.[8] From the 1970s through the initiation of this lawsuit, Plaintiff has never requested or taken prescription medication for her alleged disorders, and at various points during that time she has indicated on medical forms that she does not suffer from anxiety, depression, mental impairments or disability. Also during that time, Plaintiff was married three times, successfully raised six children, held many different jobs, took vacations across the country, and moved residences in and out of Missouri "quite a bit," all without any prescription from a doctor for medicine related to panic disorder, anxiety or agoraphobia, and without the use of a service animal.

Plaintiff's argument in response to this overwhelming evidence that for more than 30 years during which she is claiming disability she made no complaints of disability, was not diagnosed with

---

[7] Plaintiff also claims that her impairments cause her to have panic attacks, and have previously prompted her to lock herself and her children in her home.

[8] This diagnosis was made by a medical doctor who testified he did not make any objective findings, but based the diagnosis solely on the subjective statements of Plaintiff.

a disability, and has no record of any prescription medication for disability is that "[s]he held employment and functioned in that work environment to raise money for her family. It was only after self-medicating and getting medications from physicians she worked with without prescriptions that she was able to function in this fashion." Pl's Combined Resp. To Defs.' Mots. For Summ. J at 30. The idea that she could function with over the counter medications is not unusual and certainly does not support a claim for disability. The claim that she got prescription medication without prescriptions from physicians she worked with represents illegal activity by both plaintiff and her physician which, absent any other evidence than plaintiff's bare assertion, the Court is not inclined to consider. The factual assertion is deficient as well since it makes no reference to what the medication was, when it was taken, and why it was taken.

A review of the record indicates Plaintiff has experienced no significant physical limitations, as well as no significant difficulty caring for herself or her children. To the contrary, it appears Plaintiff has been quite successful in her personal and professional life, where she has founded her own business, organized an animal orphanage, and served as president of the Walnut Street Historic Association in Springfield, Missouri. Though Plaintiff claims to suffer panic attacks on occasion that limit her ability to go out in public, she offers no specific instances where her impairments impeded her ability to perform any major life activities. At most it appears Plaintiff's impairments offer no more than mild limitations compared to the general population, and the Eighth Circuit has repeatedly found individuals with similar limitations do not qualify as disabled under the ADA. *E.g., Heisler v. Metropolitan Council*, 339 F.3d 622, 628-30 (8th Cir. 2003) (finding plaintiff's allegations that depressive disorder caused her to isolate herself was insufficient to establish disability under ADA in part because record revealed Plaintiff supervised others at work and her

depression did not significantly impact major life activities); *Cooper*, 246 F.3d at 1088-89 (finding plaintiff who suffered from depression for over 30 years was not disabled in part because she had worked and raised a family, oversaw her own finances, and lived alone and successfully cared for her pets); *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 598 (8th Cir. 1998) (finding plaintiff who suffered from depression and experienced anxiety in elevators and while driving was not disabled in part because she was able to work and received good reviews, and was unable to point to any instance where mental disorders impeded work performance).

After careful consideration of the evidence and relevant precedent, the Court finds that the undisputed evidence in this case does not support a determination that Plaintiff's disorders limit any of her major life activities, and accordingly, Plaintiff is not disabled under the ADA. For this reason alone, all Defendants are entitled to summary judgment on all of Plaintiff's remaining claims.

**II.     The Monkey is Not a Service Animal**

Even assuming Plaintiff *is* disabled, the evidence in this case is insufficient to establish that her monkey is a service animal under the ADA. Because the only alleged discrimination is a denial of access while Plaintiff is accompanied by the monkey, a finding that the monkey does not qualify as a service animal also warrants granting summary judgment for Defendants on Plaintiff's remaining claims.

The regulations for Title III outline that "[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability."[9] 28 C.F.R. § 36.302(c)(1). Under the ADA, "service animal" means "any guide dog,

---

9

ADA statutes and regulations discuss the benefit of access with a service animal in terms of "modif[ications]" to policies and procedures. *See* 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(c)(1); 28 C.F.R. § 35.130(b)(7). While the regulation specifically addressing service animals discusses a "public accommodation" making the modification to

11

signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items." 28 C.F.R. § 36.104. There are no requirements as to the amount or type of training that a service animal must undergo, nor the type of work or assistance that a service animal must provide, but the animal be trained to perform tasks or do work for the benefit of a disabled individual. *Access Now, Inc. v. Town of Jasper, Tenn.*, 268 F. Supp. 2d 973, 980 (E.D. Tenn. 2003).

Plaintiff claims she trained her monkey to perform tasks that are beneficial to coping with her disability, including: blocking people from getting too close in public places, "tolerat[ing] ... a position for hours" so Plaintiff can focus without anxiety, bringing Plaintiff to full awareness by holding her hand or touching her face, sitting on her lap for "as long as it takes to relieve the emotional overload," getting his toothbrush to encourage her to get out of bed, bringing the remote control to the TV or the cell phone if Plaintiff is not "functioning normally," turning her turn signal in the car when she reaches her street to inform her it's time to turn, opening the car door as an "escape strategy," using a "direct look with an open mouth" or a "gentle push" to alert strangers to stay away, and hugging Plaintiff to bring her anxiety level down.

The vast majority of these "tasks" involve nothing more than the monkey providing comfort.[10] An animal that simply provides comfort or reassurance is equivalent to a household pet,

---

allow access to a service animal, a public entity has the same legal obligation as a public accommodation to make reasonable modifications to policies or procedures to allow service animals access to facilities and places of public accommodation when necessary to avoid discrimination on the basis of disability. *See* 28 C.F.R. § 35.130(b)(7).

[10]

Plaintiff's physician, who recommended the use of the monkey as a service animal, indicated the primary "task" he was aware of that the monkey performed for Plaintiff's benefit was sitting with her to provide comfort. The doctor

12

and does not qualify as a service animal under the ADA. *See Baugher v. City of Ellensburg, Wash.*, No. CV-06-3026-RHW, 2007 WL 858627, at *5 (E.D. Wash. Mar. 19, 2007); *Access Now, Inc.*, 268 F. Supp. 2d at 980. Other "tasks" that the monkey allegedly performs may assist with daily life, but Plaintiff fails to explain exactly how the "tasks" relate to her disability. For example, while the monkey bringing Plaintiff a toothbrush or the remote to the TV may relate to a disability if Plaintiff needed assistance with fetching items, Plaintiff fails to sufficiently explain how these actions are required for her to cope with her agoraphobia or anxiety disorder other than to provide her comfort or encouragement. In addition, it would appear these tasks are performed at Plaintiff's home, and, therefore, would not be related to Defendant's conduct or limited by this ruling. Plaintiff also failed to explain why her anxiety disorder requires the monkey to turn her turn signal in the car to alert her when to turn into her street or driveway. While "tasks" such as using a "direct look with an open mouth" or a "gentle push" may relate to Plaintiff's anxiety disorders by keeping people away, Plaintiff provides no explanation as to the monkey's training or the specific cues that would trigger the monkey to perform these "tasks." *See Baugher*, 2007 WL 858627 at *5. Such actions are aggressive actions, particularly for a primate, and without evidence of specific training or cues indicating the monkey only performs these tasks in situations where Plaintiff's disorders may require it, these "tasks" may feed into the health and safety concerns Defendants have raised regarding having a primate present in food service establishments.

On the whole, there is insufficient evidence indicating the monkey was specifically trained to perform any "tasks" related to Plaintiff's disorders. There is also no specific evidence indicating

---

also indicated he was unaware of the requirements for an animal to qualify as a service animal under the ADA.

Plaintiff's disability requires the use of a monkey to perform day-to-day activities.[11] While the Court does not doubt that the monkey provides Plaintiff with a sense of comfort and helps her cope with any anxiety she may have, the ADA requires more for an animal to qualify as a service animal. *See Baugher*, 2007 WL 858627 at *5; *see also Pruett v. Ariz.*, 606 F. Supp. 2d 1065, 1071 (D. Ariz. 2009) (finding chimpanzee that "sits with [the plaintiff] when she is home alone, retrieves candy or a beverage with sugar for her on command, turns lights on for her, picks up remote controls and telephones, sleeps with her, and gives her mental stimulation" did not qualify as service animal because tasks were unrelated to diabetic disability). For these reasons, the Court finds that Plaintiff's monkey is not a service animal, and therefore the Defendants did not violate any provision of the ADA by disallowing Plaintiff to enter any establishment with her monkey.

### III.   Defendants Cannot Be Forced to Violate Other Legal Provisions to Provide Access

This lawsuit stemmed directly from SGCHD's decision to send letters to the food service establishments in Springfield, Missouri, wherein it warned them that allowing Plaintiff to bring her monkey into their establishment would violate Missouri law. As Wal-Mart and Cox both note, this forced them to choose between potentially violating a directive from a local health organization (and Missouri law) by allowing the monkey onto the premises or potentially violating the ADA if in fact the monkey was a service animal and Plaintiff was a qualified person with a disability. The ADA does not require an entity or place of public accommodation to accommodate a person's disability by ignoring other duties imposed by law. *Cf. Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998). As such, the Court finds that Wal-Mart and Cox did not violate the ADA by

---

[11] Plaintiff claims she has suffered from her disorders for many years, yet she has only had her monkey since 2004. During that time she performed all of life's major activities without need of a service animal.

denying the monkey access pursuant to SGCHD's letter.

## IV. Legitimate Health and Safety Concerns

While ADA regulations generally require that "a public accommodation shall modify policies, practices or procedures to permit the use of a service animal by an individual with a disability," 28 C.F.R. § 36.301(a), the regulations do not create a blanket right of universal access for all service animals. *Pool v. Riverside Health Serv., Inc.*, No. 94-1430-PFK, 1995 WL 519129, at *4 (D. Kan. Aug. 25, 1995). A public accommodation is not required to permit an individual access to its facilities when that individual poses a direct threat to the health or safety of others. 28 C.F.R. § 36.208(a). Under the regulations, a "direct threat" means "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services." 28 C.F.R. § 36.208(b). "In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk." 28 C.F.R. § 36.208(c).

In this case, Cox, an entity that provides medical services, has provided ample evidence that it undertook an extensive inquiry regarding Plaintiff's monkey. Cox consulted with the Director of Infection Prevention at CoxHealth, an infectious disease physician at CoxHealth, federal Centers for Disease Control guidelines regarding service animals in hospitals, and Cox's own policies regarding service animals. The experts and the guidelines all recommended against allowing a

15

monkey access to medical facilities because of the high risk for zoonotic disease transmission. The guidelines and experts also warned that primates present a significant risk of unpredictable violent behavior and may interfere with patient confidentiality. In addition to the recommendation of its experts and warnings in the guidelines, Cox also had the letter from SGCHD indicating that allowing the monkey access to food service establishments (which Cox operated at multiple facilities) would violate certain provisions of Missouri law related to health and cleanliness. It must also be kept in mind that Plaintiff sought to bring her monkey into Cox facilities on a regular basis while she attended classes at Cox College.

Under the circumstances, it appears Cox made an individualized assessment of whether the monkey presented a direct risk to public health and safety, and based its judgment on objective medical evidence and the actual risk presented by having the monkey present in its facilities. While the ADA is designed to allow disabled individuals to have meaningful access to the world through the use of service animals, "it does not compel hospitals to jeopardize the health and safety of their patients." *Pool*, 1995 WL 519129, at *5 (finding hospital did not violate ADA by denying disabled individual accompanied by service dog access to private areas of hospital). Given the risk for disease transmission or unpredictable violent behavior by a primate during the times Plaintiff would be attending classes at Cox College, the Court finds Cox was not required to modify its policies to allow the monkey access to its facilities. For this reason as well as those previously stated, summary judgment for Cox is appropriate.[12]

## CONCLUSION

---

[12] It should also be noted that SGCHD underwent a similar painstaking objective analysis of the risks that Plaintiff's monkey presented to public health and safety through its presence in food service establishments.

For the reasons stated herein, Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment (Doc. 84); Defendant CoxHealth's Motion for Summary Judgment (Doc. 85); and Separate Defendant Springfield-Greene County Health Department's Motion for Summary Judgment (Doc. 88) are **GRANTED**. Plaintiff's Motion for Summary Judgment is **DENIED** (Doc. 90).

**IT IS SO ORDERED**.

DATED:   October 21, 2009                         */s/ Richard E. Dorr*
                                                  RICHARD E. DORR, JUDGE
                                                  UNITED STATES DISTRICT COURT